## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

URSULA LENHARDT,          )
                             )
              Plaintiff,     )
                             )
        v.              )       Case No. 21-4048-TC-ADM
                             )
FEDERAL REPUBLIC OF     )
GERMANY, et al.,          )
                             )
           Defendants.    )

## ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND REPORT AND RECOMMENDATION

Pro se plaintiff Ursula Lenhardt's complaint names as defendants the Federal Republic of Germany ("Germany"), German Minister of Foreign Affairs Heiko Maas ("Maas"), the Foreign Ministry of Germany (the "Ministry"), and certain German consulate employees located in Chicago, Illinois. (ECF 1.) Ms. Lenhardt asserts a claim under 42 U.S.C. § 1983, alleging that defendants violated her First Amendment rights when they did not issue her a new German passport in retaliation for a lawsuit she filed in Germany. In conjunction with Ms. Lenhardt's complaint, she also filed a Motion to Proceed In Forma Pauperis. (ECF 3.) As discussed in further detail below, the court grants Ms. Lenhardt leave to proceed in forma pauperis ("IFP") but recommends that the presiding district judge dismiss her complaint without leave to amend.

## I.  MS. LENHARDT MAY PROCEED IFP.

Title 28 U.S.C. § 1915 allows courts to authorize commencing a civil action "without prepayment of fees or security therefor, by a person who submits an affidavit that . . . the person is unable to pay such fees or give security therefor." Proceeding IFP "in a civil case is a privilege, not a right—fundamental or otherwise." *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998). The decision to grant or deny IFP status under § 1915 lies within "the sound discretion of the

district court." *Engberg v. Wyoming*, 265 F.3d 1109, 1122 (10th Cir. 2001).  After carefully reviewing the information Ms. Lenhardt provided in the financial affidavit in support of her motion, the court waives the filing fee required for her to commence this lawsuit.  Ms. Lenhardt is granted leave to proceed IFP.

## II.    THE COURT RECOMMENDS DISMISSING MS. LENHARDT'S COMPLAINT.

When a plaintiff proceeds IFP, the court may screen the complaint under 28 U.S.C. § 1915(e)(2)(B).  The court may dismiss the complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  The purpose of § 1915(e)(2) is to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate." *Buchheit v. Green*, 705 F.3d 1157, 1161 (10th Cir. 2012).

In addition, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).  "[F]ederal courts are courts of limited subject-matter jurisdiction," and they "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quotation omitted).  The power to hear a case "can never be forfeited or waived," and therefore the court always has an independent obligation to determine whether subject-matter jurisdiction exists. *Id.* (quotation omitted); *see also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte.").

### A.    Legal Standard

Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard that applies to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kay v. Bemis*, 500 F.3d

1214, 1217 (10th Cir. 2007).  To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief.  *Id.*  Dismissal of a pro se plaintiff's complaint for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to give [plaintiff] an opportunity to amend."  *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001).  The court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff."  *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Similarly, to determine whether a plaintiff has adequately alleged subject-matter jurisdiction, the court looks to the face of the complaint.  *Penteco Corp. v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).  The court accepts "the well-pleaded factual allegations as true, . . . but ignor[es] conclusory allegations of jurisdiction."  *Kucera v. CIA*, 347 F. Supp. 3d 653, 659 (D.N.M. 2018) (citing *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), and *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)), *aff'd*, 754 F. App'x 735 (10th Cir. 2018).  "The party seeking the exercise of jurisdiction in his favor 'must allege in his pleading the facts essential to show jurisdiction.'"  *Penteco*, 929 F.2d at 1521 (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Because Ms. Lenhardt is proceeding pro se, the court construes her pleadings liberally and holds them "to a less stringent standard than those drafted by attorneys."  *Johnson v. Johnson*, 466

F.3d 1213, 1214 (10th Cir. 2006).  In doing so, the court does not "assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The plaintiff still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

### B.      Analysis

Ms. Lenhardt's complaint alleges that she is a German citizen.  (ECF 1, at 4.)  She states that, before coming to the United States, she filed a lawsuit in Germany against family members of a former-Nazi judge who allegedly caused her brother's death.  (*Id.* at 2, 5-7.)  The complaint is unclear as to when Ms. Lenhardt filed this lawsuit, but she states she objected to this "misconduct[] since 2008, beginning by reporting it to the police and then filing a lawsuit."  (*Id.* at 7.)  Ms. Lenhardt alleges that, after she moved to the United States, she applied for a new German passport in 2017, and again in 2020.  (*Id.* at 2, 5-6, 8.)  She contends that defendants wrongfully refused to issue the passport in retaliation for her exercising her First Amendment rights by filing the lawsuit in Germany.  (*See id.* at 2, 5-13.)  Ms. Lenhardt brings a § 1983 First Amendment retaliation claim against defendants.  (*Id.* at 14.[1])  She also alleges, in a mostly conclusory fashion, that defendants' alleged conduct violated "a number of other protected civil rights pursuant to American, European and German law."  (*Id.* at 2; *see also id.* at 8, 13-14, 18.)  Ms. Lenhardt states that defendants' refusal to issue her a passport has harmed her in various ways, including interfering with her immigration proceedings in the United States and her ability to

---

[1] The court notes that page 15 of the complaint is an identical reprint of page 14 and does not set forth any separate § 1983 claim.

4

obtain employment. (*See id.* at 5-6.) She seeks $12 million in damages and an order requiring defendants to issue her a passport immediately.[2] (*Id.* at 14, 16.)

### 1.    Germany and the Ministry are immune from suit.

The Foreign Sovereign Immunities Act ("FSIA") provides "the sole basis for obtaining jurisdiction over a foreign state in [federal and state] courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, a foreign sovereign as well as its agencies and instrumentalities—like the Ministry—are presumptively immune from suit in federal court unless a statutory exception applies. *See* 28 U.S.C. § 1604; *Saudi Arabia v. Nelson*, 507 U.S. 349, 355-56 (1993) ("[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.").

Here, Ms. Lenhardt invokes the non-commercial tort exception, which permits a plaintiff to seek money damages from a foreign state for "personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). Ms. Lenhardt asserts a claim pursuant to § 1983, a statute that the Supreme Court has "repeatedly noted . . . creates a species of tort liability." *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quotation omitted). But there are exceptions to the non-commercial tort exception. A foreign state retains immunity if the plaintiff's claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). A foreign state's decision as to

---

[2] Ms. Lenhardt also "suggests"—but does not actually request—that the court take a number of actions as to the defendant consulate employees, such as expelling them from the United States and prosecuting them for violations of German law. (ECF 1, at 17-18.)

whether to issue a passport is a discretionary function. *See Nwoke v. Consulate of Nigeria*, No. 17-CV-00140, 2018 WL 1071445, at *4 (N.D. Ill. Feb. 27, 2018), *aff'd*, 729 F. App'x 478 (7th Cir. 2018). Ms. Lenhardt makes a conclusory allegation asserting otherwise (*see* ECF 1, at 4), but German law sets forth a number of grounds upon which the responsible authority may refuse to issue a German passport. *See* Paßgesetz [PaßG] [Passport Act], Apr. 19, 1986, BGBl. I at 537, § 7, last amended by Gesetz [G], July 5, 2021, BGBl. I at 2281 (Ger.), https://www.gesetze-im-internet.de/pa_g_1986/index.html.[3]  The non-commercial tort exception therefore does not apply here. *See Nwoke*, 2018 WL 1071445, at *4 ("The discretionary nature of the processing of a passport application takes [the plaintiff's] claim outside of the tortious activity exception.").

Nor do any of the other exceptions to immunity listed in 28 U.S.C. § 1605(a) or 28 U.S.C. § 1605A(a). Ms. Lenhardt does not allege facts suggesting that Germany and the Ministry have explicitly or implicitly waived immunity under § 1605(a)(1). This case does not involve property expropriated in violation of international law, with a nexus to commercial activity in the United States (§ 1605(a)(3)); rights in immovable property, or property acquired by succession or gift, in the United States (§ 1605(a)(4)); or an arbitration agreement (§ 1605(a)(6)). And although Ms. Lenhardt alleges that she has had to pay fees in connection with her 2020 passport application (*see* ECF 1, at 8-9), that fact does not transform the sovereign act of issuing a passport into a commercial activity in the United States that could strip a foreign state of its immunity under § 1605(a)(2). *See Nwoke*, 2018 WL 1071445, at *3 ("[E]ven if the Consulate has a profit motive for processing the passport applications, the act itself remains a *sovereign* act of regulation . . . . So the commercial activity exception does not apply."). Ms. Lenhardt's complaint mentions the

---

[3] The English translation that does not include the most recent amendment is available here: https://www.gesetze-im-internet.de/englisch_pa_g/index.html.

terrorism exception to immunity in § 1605A(a).  (*See* ECF 1, at 4.)  But this exception also does not apply here because this case does not involve "personal injury or death . . . caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act."  28 U.S.C. § 1605A(a)(1).

Because Ms. Lenhardt has not alleged any facts suggesting that an exception to sovereign immunity applies here, and it does not appear that she could amend to do so, the court recommends that the court dismiss her claim against Germany and the Ministry for lack of subject matter jurisdiction.  *See Johnson v. U.K. Gov't*, 608 F. Supp. 2d 291, 294-97 (D. Conn. 2009) (dismissing a complaint where the plaintiff failed to allege any FSIA exceptions applied, and finding that no amendment would succeed in stating a claim because the plaintiff sought "money damages and equitable relief . . . based on a discretionary act taken by an agent of a foreign state"); *Stirling v. China*, No. 3:20-CV-00713-SB, 2020 WL 5638630, at *1-*2 (D. Or. Aug. 14, 2020) (recommending dismissal without leave to amend where the plaintiff's negligence claim was necessarily based on the Chinese government's exercise or failure to exercise a discretionary function), *report and recommendation adopted*, 2020 WL 5637399 (D. Or. Sept. 21, 2020); *Strable v. Republic of Philippine Islands*, No. CIV A 605-2927-RBH, 2007 WL 858829, at *1-*2 (D.S.C. Mar. 16, 2007) (adopting report and recommendation recommending dismissal, where the plaintiff failed to allege any facts falling within the FSIA exceptions).

### 2.    Maas is immune from suit.

Common law governs whether a foreign official, like Maas, is entitled to immunity.  *See Samantar v. Yousuf*, 560 U.S. 305, 324-25 (2010); *Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 230 (D.D.C. 2018), *aff'd*, No. 18-7170, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019), *and aff'd*, 792 F. App'x 6 (D.C. Cir. 2019).  Conduct-based immunity "is available to any public minister, official,

or agent of the foreign state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Doe 1*, 318 F. Supp. 3d at 230 (quotations omitted). The court has the authority to determine whether the requisites for conduct-based immunity exist. *Id.*

Ms. Lenhardt does not allege that Maas has personally taken any action with respect to her passport, and the body of her complaint does not specifically mention him. It appears that Ms. Lenhardt named Maas as a supervisor of the consulate employee defendants (*see* ECF 1, at 4 (alleging that the Ministry is "liable and responsible" for a violations of official duty), or in an attempt to effect service (*see id.* at 20 (stating in the complaint's certificate of service that "the FSIA requires that civil process . . . be addressed and delivered directly to the Foreign Minister"). Regardless, Maas is entitled to immunity. He is a public minister of Germany, and Ms. Lenhardt has sued him in his official capacity. (*Id.* at 5 (stating that "Defendants . . . are sued . . . in their official capacities").) Exercising jurisdiction here would have the effect of enforcing a rule of law against Germany because any actions Maas allegedly took were in his official capacity, and any ruling on the legality of those actions "would amount to a decision on the legality of [Germany's] actions." *Doe 1*, 318 F. Supp. 3d at 233. Further, the relief Ms. Lenhardt seeks would interfere with Germany's government if granted—again, "effectively enforc[ing] a rule of law against [Germany]." *Id.*

The court therefore recommends that Ms. Lenhardt's claims against Maas be dismissed for lack of subject matter jurisdiction, without leave to amend. *See id.* at 231-33, 238 (dismissing for lack of personal and subject matter jurisdiction after finding that Nigerian government, military, and police officials properly claimed immunity in a lawsuit alleging that they planned, directed, and executed attacks against the Igbo ethnic group); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 11-17

(D.D.C. 2014) (dismissing driver defendant with prejudice after finding he properly claimed immunity in a lawsuit alleging he negligently struck and killed a pedestrian while employed by the Swiss Confederation).

### 3. The consulate employees are immune from suit.

A federal district court may exercise jurisdiction over civil actions against a foreign state's consuls and vice consuls, as well as diplomatic mission members. 28 U.S.C. § 1351. Jurisdiction under § 1351, however, may be limited by treaty. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987) (citing *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)). The United States and Germany are parties to the Vienna Convention on Consular Relations ("Vienna Convention"), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. Under Article 43 of the Vienna Convention, "[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions." In other words, the court has jurisdiction over consular officers and employees "only with respect to acts that do not constitute 'consular functions.'" *Johnson*, 608 F. Supp. 2d at 296. Article 5 of the Vienna Convention defines "consular functions" to include "issuing passports and travel documents to nationals of the sending State."

Here, Ms. Lenhardt's claim arises out of the defendant consular employees—named as Mr. Kaufmann, Mr. Lamer, Mrs. Wiebke Zell, Mrs. Beste, Mrs. Michaela Jones, and Mr. Feltz (*see* ECF 1-1)—allegedly refusing to issue her a passport in retaliation for a lawsuit she filed in Germany. Issuing a passport is a consular function. Therefore, these defendants are immune from suit.

Accordingly, the court recommends that Ms. Lenhardt's claims against the consular employees be dismissed for lack of subject matter jurisdiction, without leave to amend. *See* 22

U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention . . . shall be dismissed."); *see also Risk v. Halvorsen*, 936 F.2d 393, 395 (9th Cir. 1991) (affirming dismissal of claims against consular officials arising out of consular functions); *Johnson*, 608 F. Supp. 2d at 296 (dismissing claims against a Consul-General that arose out of adjudicating plaintiff's application for political asylum, a consular function, without leave to amend); *Aden v. Somalia Permanent Mission to U.N.*, No. 3:15-CV-00513, 2015 WL 2193858, at *3 (M.D. Tenn. May 11, 2015) (dismissing claims arising out of allegations directly related to official diplomatic functions).

### 4. Ms. Lenhardt fails to state a claim upon which relief can be granted.

Even if defendants were not entitled to immunity, Ms. Lenhardt's complaint should be dismissed for failure to state a claim upon which relief can be granted. Ms. Lenhardt purports to assert a § 1983 First Amendment retaliation claim. (ECF 1, at 14.) But a defendant can be liable under § 1983 only if acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." The reference to "State" in § 1983 "is not intended to include foreign governments; it clearly is a reference to a state of the United States." *Kavanagh v. KLM Royal Dutch Airlines*, 566 F. Supp. 242, 246 (N.D. Ill. 1983). Thus, acts by a foreign state and its officials "cannot constitute conduct under color of state law." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 956 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (quotation omitted); *see also Kavanagh*, 566 F. Supp. at 245-46 (finding no state action where the defendant was a company organized under Dutch law and mostly owned by the Kingdom of the Netherlands); *Coggins v. London Metro. Police Serv.*, No. 507-CV-163-F, 2007 WL 1933585, at *3 (E.D.N.C. July 2, 2007) (adopting report and recommendation recommending dismissal where the court could not reasonably infer that the foreign police service defendant was acting under color of any

United States jurisdiction); *cf. Gerritsen*, 819 F.2d at 1518 (construing 28 U.S.C. § 1343 and determining that "acts performed by the defendants, all of whom are officials, instrumentalities, or employees of the Mexican government, could not constitute acts under color of state law"). Accordingly, even if defendants were amenable to suit in this court, Ms. Lenhardt cannot state a § 1983 claim against them.

## III.    CONCLUSION

For the reasons discussed above, the court recommends that the presiding district judge dismiss Ms. Lenhardt's complaint without leave to amend on immunity and subject matter jurisdiction grounds.

\* \* \* \* \*

Pursuant to 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b)(2), and D. KAN. RULE 72.1.4(b), plaintiff may file written objections to this report and recommendation within fourteen days after being served with a copy. If plaintiff fails to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court. *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE ORDERED** that plaintiff Ursula Lenhardt's Motion to Proceed In Forma Pauperis (ECF 3) is granted.

**IT IS FURTHER RECOMMENDED** that Ms. Lenhardt's complaint be dismissed.

**IT IS FURTHER ORDERED** that the clerk's office mail a copy of this Order and Report and Recommendation to Ms. Lenhardt via regular mail and certified mail, return receipt requested.

**IT IS SO ORDERED.**

Dated August 20, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge